# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | **Criminal Action No. 11-277 (SRC)** |
| Plaintiff, | : | |
| | : | **OPINION & ORDER** |
| v. | : | |
| MICHAEL F. DURANTE, | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the first motion to suppress (Docket Entry No. 108) by Defendant Michael F. Durante. In the Opinion and Order of December 19, 2011, this Court Ordered that an evidentiary hearing be held on one aspect (later amended to two aspects) of the motion: 1) suppression of evidence seized from the safe at Defendant's home on March 24, 2011; and 2) suppression of all post-arrest statements allegedly made by Defendant on March 24, 2011. For the reasons set forth below, that part of the motion on which decision had been reserved will be denied.

An evidentiary hearing on the motion was held on January 9, 2012. The Government offered testimony of two witnesses, Michael O'Neill and Gino Izzo. Defendant declined to present any witnesses. This Court Ordered supplementary briefing. Defendant has since moved to strike the hearing testimony of Gino Izzo.

**I. Suppression of evidence obtained from the safe**

At issue is suppression of evidence seized from a warrantless search of a locked safe at Defendant's home on March 24, 2011. After this Court held the evidentiary hearing, Defendant

challenged the legality of the search that resulted in discovery of the safe. In short, the evidence presented at the hearing showed that the safe was discovered during a second protective sweep of the basement of the home. Defendant correctly cites the law regarding protective sweeps: "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). Defendant argues that the second protective sweep was not permissible under this principle.

In response, the Government objects to the characterization of the search of the basement as a protective sweep. Rather, the Government appears to contend that the search of the basement was permissible because it was done to locate the Defendant in the house, in execution of the arrest warrant. This is not supported by the evidence. Agent O'Neill testified that he searched the basement in order to conduct a protective sweep. (1/9/12 Hrg. Tr. 52:10-13.) Agent O'Neill also testified that, at the time of the basement search, the officers had been in the home for ten to twenty minutes. (Id. at 49:7.) Agent O'Neill also testified that, immediately upon entering the home, some agents went upstairs. (Id. at 43:1.) These circumstances are inconsistent with the position that O'Neill looked in the basement to locate Defendant to arrest him. There is nothing in O'Neill's testimony to suggest that O'Neill searched the basement in an effort to locate Defendant to arrest him. The evidence presented does not support the Government's claim that the safe was discovered while searching the basement for Defendant.

The Government then argues, however, that, even if the search of the basement that discovered the safe was impermissible, suppression is not required because of the doctrine of

2

inevitable discovery: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . the evidence should be received." Nix v. Williams, 467 U.S. 431, 444 (1984). The Government contends that, because Mrs. Durante consented to the search of the residence, the safe would have been legally discovered during that lawful search.

Defendant, in reply, argues that the doctrine of inevitable discovery does not apply because Mrs. Durante gave her consent to search after the discovery of the safe. Defendant here relies on a false proposition – that Third Circuit law requires that the inevitable discovery analysis be based on historical facts as they existed at the time of the illegal search.[1] There are two problems with Defendant's position. First, Defendant does not cite to any authority which actually supports the proposition. Defendant cites the Third Circuit's decision in United States v. De Reyes, 149 F.3d 192, 195 (3d Cir. 1998), which goes *contra* to Defendant's proposition: "It is the government's burden to show that the evidence at issue would have been acquired through lawful means, a burden that can be met if the government establishes that the police, following routine procedures, would inevitably have uncovered the evidence." This makes clear that the inquiry does rest on prediction about what might have happened through following routine

---

[1] Defendant contends that this Court must "view affairs as they existed 'the instant before' the violation." (Def.'s Post-Hearing Reply 6.) This is not so much wrong as it is an oversimplification. The case law certainly contains statements emphasizing the importance of historical facts, but it is taking those statements out of context to say that only historical facts are considered. Thus, the Third Circuit has explained: "The independent source and inevitable discovery doctrines thus differ in that the former focuses on what actually happened and the latter considers what would have happened in the absence of the initial search." United States v. Herrold, 962 F.2d 1131, 1140 (3d Cir. 1992). An inquiry into what would have happened inevitably requires consideration of possibilities which go beyond what actually happened.

3

procedures, which is impossible if only historical facts are considered. Second, Defendant's proposition, if true, would largely eliminate the doctrine of inevitable discovery, since it would bar consideration of what might have happened if routine procedures had been followed.

Defendant here does not argue that, when the officers obtained consent to search the residence from Mrs. Durante and then searched the residence, it did not follow a routine procedure. The Government has therefore persuaded this Court that the police, following routine procedures, would inevitably have discovered the evidence. The routine procedures are: 1) obtaining Mrs. Durante's consent to search the house; and 2) searching the house pursuant to this consent. Although the safe was discovered during what may have been an unlawful search, because the safe would have ultimately been discovered through lawful means, the Fourth Amendment does not require that the evidence of the safe be suppressed.

Defendant next argues that the Government has not sustained its burden of proof that Dr. Durante's consent to search the safe was voluntary. Defendant contends that the fact that the officers used a threat of obtaining a search warrant to convince Dr. Durante to consent renders that consent involuntary.

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). At the hearing, Agent O'Neill testified as follows:

> Then I told him that ultimately he had the absolute right to refuse consent to search the safe. And I went on to tell him that if he did refuse it, that we did have the ability to apply for a search warrant and then if we did get a search warrant, that the contents of the safe would be ultimately revealed.

(1/9/12 Hrg. Tr. 29:5-10.) It is difficult to view this as coercion, since the statements appear to be accurate, inform Defendant of his right to refuse consent, and reflect the fact that there was uncertainty about whether the police would be able to get a search warrant.

In support, Defendant cites United States v. Evans, 27 F.3d 1219, 1231 (7th Cir. 1994), but this case does not support Defendant's position, as that Court held: "Police may not threaten to obtain a search warrant when there are no grounds for a valid warrant, but when the expressed intention to obtain a warrant is genuine . . . and not merely a pretext to induce submission, it does not vitiate consent." The Seventh Circuit thus inquired into whether the statements reflected genuine intent or were a pretext. In the instant case, the testimony supports the view that the statements were entirely genuine: the Government did have the ability to apply for a search warrant and, if it obtained such a warrant, the contents of the safe would be revealed.[2] See also United States v. Molt, 589 F.2d 1247, 1252 (3d Cir. 1978) (inquiring into whether a defendant's belief that he must consent was based on the misrepresentations by Government agents).

Defendant also cites United States v. White, 979 F.2d 539, 542 (7th Cir. 1992), but that case does not support Defendant's position either, as that Court held: "Baseless threats to obtain a search warrant may render consent involuntary." The evidence before this Court indicates that O'Neill's statements were not baseless threats. Rather, they were accurate statements of both Defendant's right to refuse consent, and a real option that the Government could pursue in the face of that refusal. Especially in view of the evidence that the statement of the option of applying for a search warrant was preceded by a statement informing Defendant that he had an absolute right to refuse to consent to the search, the evidence does not support finding that the

---

[2] Defendant has not even argued that these are not true statements.

5

Government coerced Defendant by making baseless threats.

Moreover, in Schneckloth, the Supreme Court singled out for special mention one factor to be considered: "knowledge of the right to refuse consent is one factor to be taken into account." 412 U.S. at 227. The Supreme Court has also described this factor as "highly relevant to the determination that there had been consent." United States v. Mendenhall, 446 U.S. 544, 559 (1980). Since the uncontradicted evidence shows that O'Neill prefaced his search warrant statement with a statement informing Defendant of his right to refuse consent, this Court sees no basis to conclude that, considering the totality of the circumstances, Defendant's consent was the product of duress or coercion.

## II. Suppression of Defendant's post-arrest statements

Defendant's post-hearing opening brief only briefly touches upon the subject of suppression of statements made by Defendant prior to his signing the Miranda waiver, merely asserting that the Government has not demonstrated what statements were not in violation of Defendant's constitutional rights. The post-hearing reply brief barely touches on the subject.

The evidence presented shows that Defendant executed a Miranda waiver approximately 30 minutes after the officers entered the residence. Officer Izzo testified that he conversed with Defendant during that time period prior to the signing of the waiver, and that the conversation was "small talk" that was not about Defendant's case. (1/9/12 Hrg. Tr. 93:11-17.) There is no contrary evidence in the record. The Government has sustained its burden of proving that no post-arrest statements were made prior to Defendant's signing of the Miranda waiver, in violation of Defendant's constitutional rights.

**III.     The deletion of the text messages**

On January 30, 2012, Defendant filed a letter stating that he had just learned that the Government had deleted approximately 264 text messages between Gino Izzo and a cooperating witness. On January 31, 2012, Defendant filed a motion to strike Izzo's hearing testimony. Defendant contends that the deleted messages qualify as Jencks material, that the Government was obliged to preserve them and provide them to Defendant prior to the suppression hearing, and that the Court should therefore strike Izzo's suppression hearing testimony.

As the Government observes, the Jencks Act applies to any prior statement made by a witness "which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Government argues that the text messages cannot be Jencks material as Izzo testified only as to whether Defendant executed a written Miranda waiver prior to his confession. There is no reason to believe that the text messages at issue – between Izzo and a cooperating witness – relate to that subject matter. The message log submitted by the Government shows that no text messages were sent during the time Izzo was at the Durante residence, nor did Izzo's hearing testimony refer to the cooperating witness or to any text communications.

Defendant has lost sight of what the Jencks Act is all about. As Justice Brennan explained in the original case:

> Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.

Jencks v. United States, 353 U.S. 657, 667 (1957). Defendant has not even asserted, much less

7

persuaded, that any of Izzo's text messages contained statements that would be useful for impeaching Izzo in connection with his testimony at the evidentiary hearing.

Defendant relies substantially on a sister Court's decision in <u>United States v. Suarez</u>, 2010 U.S. Dist. LEXIS 112097, *16-*17 (D.N.J. Oct. 19, 2010), a case quite distinguishable on the facts: in that case, the texter at issue had testified as a witness at trial on the subject of his texting, and so that District Court quite reasonably found that the text messages related to the subject matter of the witness's testimony. In the instant case, Izzo did not testify at the evidentiary hearing on the subject of his text messages.

Defendant has failed to raise even a colorable claim that the text messages relate to the subject matter on which Izzo testified at the evidentiary hearing. Defendant's motion to strike Izzo's testimony will be denied.

For these reasons,

**IT IS** on this 7th day of February, 2012,

**ORDERED** that Defendant's motion to suppress (Docket Entry No. 108) is **DENIED** in all respects; and it is further

**ORDERED** that Defendant's motion to strike Izzo's testimony (Docket Entry No. 202) is **DENIED.**

      s/ Stanley R. Chesler
    Stanley R. Chesler, U.S.D.J