# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES of AMERICA, | Criminal Action No. 11-277 (SRC) |
| Plaintiff, | |
| | **OPINION & ORDER** |
| v. | |
| MICHAEL F. DURANTE, | |
| Defendant. | |

**CHESLER, District Judge**

This matter comes before the Court on the motion for return of cash by Defendant Michael Durante ("Durante"). In this motion, Defendant seeks three kinds of relief: 1) the return of cash taken from Defendant's safe; 2) dismissal of the criminal forfeiture count; and 3) exclusion of all evidence of this cash at trial. For the reasons stated below, the motion will be denied.

Very briefly, the cash at issue is $291,690, taken by the Government from a safe at Defendant's home during a warrantless search on March 24, 2011. On February 7, 2012, this Court issued an Opinion and Order in which it denied, *inter alia*, Defendant's motion to suppress the evidence obtained from the search of the safe.

**I.    The return of the cash**

Defendant seeks return of the cash pursuant to Federal Rule of Criminal Procedure 41(g), which states:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court

must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Defendant concedes that this Court's Order of May 2, 2011 requires this motion to have been made within 30 days, but contends that there is good cause for the delay in filing this motion, because Defendant did not learn of the alleged spoliation of evidence[1] until February 29, 2012. The Court does not understand the reasoning here: what does the alleged spoliation of evidence have to do with Defendants Rule 41(g) motion? Defendant has not even suggested a rational connection.

Defendant does not offer a legal theory to support his entitlement to the return of the cash at this point in the case. Ordinarily, the inclusion of the forfeiture allegation in the indictment is sufficient to bar the return of money unless and until a trier of fact determines whether the funds are subject to forfeiture. The Superceding Indictment includes a forfeiture allegation which states: "The property to be forfeited includes, but is not limited to, $291,690 in United States currency seized from the residence of Michael Durante." Given this forfeiture allegation, the Government will bear the burden of proof of its right to the cash during the forfeiture phase of the trial. See Fed. R. Crim. P. 32.2.

As quoted above, Rule 41(g) states that the Court must receive the evidence on any factual issue necessary to decide the motion. This will occur at trial. Defendant has shown no good reason for this Court to make this determination before trial.

---

[1] It is undisputed that, during the seizure of the cash from the safe, agents removed the cash from dated envelopes and did not record how much cash was taken from which dated envelope. Defendant argues that this constitutes spoliation of evidence.

2

The Third Circuit has held that "[a] District Court has jurisdiction to entertain a motion for return of property made after the termination of criminal proceedings against the defendant." United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999). The question at issue here is under what circumstances may the Court entertain a motion for return of property subject to a criminal forfeiture allegation prior to trial. Defendant offers no authority to support his belief that a Court may do so. Defendant points to Rule 41(g) and two cases, but these do not give Defendant the right to seek return of the cash subject to a criminal forfeiture allegation prior to trial. Defendant first cites United States v. Van Cauwenberghe, 827 F.2d 424, 433 (9th Cir. 1987), but that case did not involve assets subject to a forfeiture allegation. Defendant then cites United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999), but that case works against Defendant, since the Third Circuit held: "such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture." Since criminal proceedings in this case have not concluded, and the property is subject to forfeiture, Chambers does not support returning the cash to Defendant prior to trial. In Chambers, the Third Circuit considered the possibility of a Defendant seeking the return of property pursuant to Rule 41(g) while a criminal prosecution is pending, but held that such a motion "is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." Id. at 377 (quotation omitted). Because the cash is subject to forfeiture, pursuant to Chambers, the motion is properly denied.

Furthermore, the question of whether Defendant is entitled to the return of any of the seized cash hinges on key determinations to be made at trial. Subsection (d) of the criminal forfeiture statute, 21 U.S.C. § 853, states:

3

> Rebuttable presumption. There is a rebuttable presumption at trial that any property of a person convicted of a felony under this title or title III is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that--
>   (1) such property was acquired by such person during the period of the violation of this title or title III or within a reasonable time after such period; and
>   (2) there was no likely source for such property other than the violation of this title or title III.

Given this statutory provision, this Court has no authority to return assets subject to forfeiture before the Court has made these determinations at trial.

Defendant argues as well that the Court should rely on its "inherent powers" to sanction the Government for its spoliation of evidence, relying on Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). NASCO, however, is inapposite. In NASCO, the Supreme Court pointed to the inherent power of the federal court, *inter alia*, to discipline attorneys, punish contempts, and vacate a judgment obtained by fraud. Id. at 43-44. Nothing like these examples has occurred here. As Defendant observes, the most general statement about the Court's inherent powers made in NASCO is this one:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.

Id. at 44-45.

Defendant's brief mention of NASCO fails to persuade this Court that its inherent powers give it the discretion to enter Orders which conflict with the scheme established by Congress in the criminal forfeiture statute. Setting aside that issue, however, even if Defendant persuaded this Court that it may exercise its inherent power in ways that conflict with 21 U.S.C. § 853, Defendant has not demonstrated that the Government abused the judicial process when its agents

removed the cash from the envelopes in the safe without keeping a record of what cash was in which envelope. Such conduct may not be exemplary, but it does not come anywhere close to constituting an abuse of the judicial process. Nor does it constitute the destruction of evidence. Although it appears that the integrity of the evidence may not have been preserved, no evidence was actually destroyed. Nor has Defendant made any demonstration that the Government's conduct in this regard was in any way willful misconduct. As this Court stated in United States v. Stabile, 2009 U.S. Dist. LEXIS 4263 (D.N.J. Jan. 21, 2009):

> This conduct, while hardly qualifying as a model of efficient, careful and cooperative law enforcement, does not rise to the level of culpability that the Supreme Court held in Herring must be apparent for the exclusionary rule to serve its deterrent purpose and outweigh the cost of suppressing evidence.

Here as well, Defendant has failed to persuade this Court that this conduct rises to a sanctionable level of culpability.

Defendant has failed to recognize a crucial distinction articulated by the Supreme Court in Ariz. v. Youngblood, 488 U.S. 51, 57-58 (1988):

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta* . . . that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class

> of cases where the interests of justice most clearly require it, i. e., those cases in
> which the police themselves by their conduct indicate that the evidence could
> form a basis for exonerating the defendant. We therefore hold that unless a
> criminal defendant can show bad faith on the part of the police, failure to preserve
> potentially useful evidence does not constitute a denial of due process of law.

In the instant matter, Defendant does not accuse the Government of failing to disclose exculpatory evidence which it holds but, rather, of failing to preserve evidentiary material which might or might not have been exculpatory. Nor has Defendant made the required showing of bad faith on the part of the police. Pursuant to <u>Youngblood</u>, the due process clause does not impose on the Government the obligation to preserve all potentially useful evidence.[2]

## II. Dismissal of the criminal forfeiture count

Defendant contends that the criminal forfeiture allegations against him should be dismissed as a sanction for the Government's alleged spoliation of evidence. Defendant argues that the evidence that certain envelopes were marked with dates which significantly predated the period of alleged conspiracy is exculpatory in nature.

The Government states that the envelopes themselves have been preserved. It is the information about what amount of cash was in each envelope that was not preserved. Defendant concedes that the practical effect of this is that "the Government cannot prove how much money was in each container . . . including in those containers bearing dates that clearly pre-dated the alleged conspiracy." (Def.'s Br. 10.) The Government bears the burden of proof of the criminal forfeiture count. Given that the envelopes themselves have been preserved, Defendant will be able to use that evidence to raise a reasonable doubt as to the connection between the cash seized

---

[2] Thus, Defendant incorrectly oversimplifies when he asserts: "Due process demands that the Government preserve evidence." (Def.'s Reply Br. 5.)

and any alleged criminal activity. Defendant recognizes that, actually, it is the Government that will be most disadvantaged by its failure to preserve the integrity of this evidence. Defendant argues that the forfeiture count should be dismissed because the Government will be unable to prove what money relates to the alleged time frame. That may or may not be so, but it is a conclusion that must be reached by the jury. Defendant has not persuaded this Court that there is a good reason why the Government should not have the opportunity to prove its criminal forfeiture case.

Here, again, Defendant relies on the legal argument that this Court should use its inherent powers, as discussed above, to dismiss the criminal forfeiture count in order to sanction the Government for its failure to preserve the integrity of the evidence. As already stated, this Court cannot conclude that the Government's handling of the envelopes constitutes conduct which either abused the judicial process or infringed upon Defendant's due process rights so as to warrant the severe sanction of dismissing the criminal forfeiture charge.

## III. Suppression of cash evidence at trial

Defendant contends that evidence of the cash should be excluded at trial pursuant to Federal Rules of Evidence 403 and 901. Defendant first points to Rule 901(a), which states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Defendant argues that, absent the evidence of what cash was in which envelope, the Government will be unable to satisfy Rule 901(a) when it offers any evidence related to the cash. To start with, the Government responds that the actual cash will not be offered as evidence at trial. Even were the Government to do so, however, Defendant's argument makes no sense. Defendant

demonstrates no connection between the evidence not preserved and the authentication requirements of Rule 901(a). Furthermore, the Third Circuit has "repeatedly noted that the burden of proof for authentication is slight." Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 328 (3d Cir. 2005).

Moreover, evidence of the cash may well be relevant at trial. As the Sixth Circuit observed, "we have consistently held that sudden unexplained wealth occurring after the commission of an offense is admissible evidence." United States v. Cecil, 615 F.3d 678, 689 (6th Cir. 2010).

Defendant also specifically cites Government Exhibit 305, consisting of two photos of cash that has been folded in half and bound with rubber bands. Defendant argues that Exhibit 305 should be excluded under Rule 403 as more prejudicial than probative. This is an issue that is best addressed at trial. As to Exhibit 305, the motion to suppress is denied without prejudice, and may be renewed at trial.

Defendant has failed to persuade this Court as to any aspect of the motion for miscellaneous relief as to the cash. The motion will be denied, but many of the issues raised may be raised again at trial.

For these reasons,

**IT IS** on this 10th day of July, 2012,

**ORDERED** that Defendant's motion for miscellaneous relief as to the seized cash (Docket Entry No. 255) is **DENIED.**

                                                  s/ Stanley R. Chesler
                                                  Stanley R. Chesler, U.S.D.J