# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES of AMERICA, | Criminal Action No. 11-277 (SRC) |
| Plaintiff, | |
| | OPINION & ORDER |
| v. | |
| MICHAEL F. DURANTE, | |
| Defendant. | |

**CHESLER, District Judge**

This matter comes before the Court on the motion to dismiss the Superceding Indictment by Defendant Michael Durante. This Court conducted five days of evidentiary hearings related to this motion. For the reasons stated below, the motion will be denied.

This motion concerns a dispute in this case over allegations that the Government failed to timely disclose a specific piece of evidence, the January 11, 2010 recording of Defendant Durante and a confidential informant, known as the "Rothbart recording."[1] Defendant contends,

---

[1] The recording contains the contents of a conversation between Defendant and Rothbart in which Rothbart unsuccessfully tried to obtain a prescription for a controlled substance from Defendant. For unknown reasons, the recording device was not turned off after this meeting and continued to record conversations between Rothbart and task force investigators following Rothbart's meeting with Defendant. The recording was ultimately and belatedly provided to Defendant's attorney. It appears that, initially, the Government only provided the portions of the recording in which Rothbart and Defendant participated. A few days later, Defendant was provided with the full recording. Upon reviewing the full recording, it was discovered that substantial portions of the recording following Rothbart's meeting with Durante were inaudible because the investigating officer, TFO Izzo, had damaged the compact disk media while using a pen to inscribe information onto the disks. The only existing CDs are both damaged. Defendant's expert witness has testified that, in his opinion, the damage was intentionally caused.

and this Court has informally indicated, that this recording contains exculpatory evidence and is Brady material.

On February 23, 2012, at a status conference, Defendant first asked this Court to investigate the circumstances surrounding the Government's handling of the Rothbart recording and its disclosure to the defense. This Court granted Defendant's application and Ordered that an evidentiary hearing be conducted on February 28, 2012. The Court conducted evidentiary hearings on February 28, February 29, March 1,[2] March 6,[3] and May 21, 2012, and Ordered supplementary briefing on this motion, which was formally filed on August 6, 2012.

These evidentiary hearings also related to a subpoena issued on February 21, 2012, commanding Assistant United States Attorney Anthony Mahajan ("Mahajan"), the Assistant United States Attorney prosecuting Defendant in this criminal case, to appear to testify and produce documents. On April 13, 2012, the Government filed a motion to quash this subpoena. On June 28, 2012, this Court entered an Opinion and Order granting the motion to quash. In that Opinion and Order, this Court stated:

> To get quickly to the bottom line, there is no dispute that, at this point, the Government has turned over to Defendant the Rothbart recording and any related evidence. There is also no dispute that the Government did not disclose the recording in a timely fashion, and that the recording was physically damaged by the actions of Government employees. There is also no dispute that the transaction at which the Rothbart recording was made will not be part of the Government's case against Defendant.

(Opinion and Order of June 28, 2012 at 3.) While the Court granted the motion to quash, and

---

[2] It was at the hearing on March 1, 2012 that Defendant first requested that Mahajan testify on the subject of the Rothbart recording.

[3] At these hearings, this Court heard testimony from witnesses John Del Re, Philip Streicher, Steven Fischer, Paul Ginsberg, Michelle Dyer, Gino Izzo, and Andre Domando.

concluded that further investigation into the evidence regarding the Government's handling of the Rothbart recording was not justified, it granted Defendant leave to apply for sanctions. Defendant then filed the instant motion, seeking to dismiss the Superceding Indictment or, in the alternative, for sanctions.

Defendant contends that "the Government has engaged in a course of pervasive misconduct whose scope and breadth is much broader than the troubling events surrounding the Rothbart recording." (Def.'s Br. 2.) Defendant argues that this Court has erred by focusing narrowly on the Rothbart recording issues, "rather than allowing the defendant to develop a full record on the issue of pervasive Government misconduct and recklessness." (Def.'s Br. 3.) The question of whether this Court should investigate further into alleged prosecutorial misconduct is not before the Court on this motion. In the Opinion and Order of June 28, 2012, this Court decided that further investigation into misconduct was not justified. Rather, the question before the Court on the instant motion is whether the existing record demonstrates prosecutorial misconduct sufficient to justify the imposition of sanctions.

Defendant asserts that Mahajan's prosecutorial misconduct includes eight examples of misrepresentations, two examples of frivolous arguments to the Court, five examples of spoliation of evidence, four examples of violations of Court Orders, one example of a constitutional violation, and four examples of discovery violations. Defendant argues that these examples demonstrate a pervasive pattern of prosecutorial misconduct in the case.

The Court has reviewed the examples of alleged prosecutorial misconduct and finds that neither does any one of them rise to the level of sanctionable misconduct, nor do they, as a whole, demonstrate a pervasive pattern of prosecutorial misconduct. As to the alleged

3

misrepresentations, the misrepresentations were all either statements which were obviously mistaken or innocent misstatements. None of these misstatements has any significance. Defendant first points to Mahajan's statement before the Magistrate Judge that cash had been seized from Defendant's safe pursuant to a search warrant, when there was no search warrant. This is unpersuasive for several reasons. First, this Court has already heard a motion to suppress this evidence and determined that it was admissible for the reasons stated in the Opinion and Order of February 7, 2012. Second, the erroneous statement to the Magistrate Judge has no significance. Defendant has not explained how this had any material effect on anything, no less shown that he suffered prejudice. There is no basis to find that this minor error constitutes intentional misconduct.

The same is true for the other asserted misrepresentations, which largely deal with misstatements regarding the timing and extent of discovery. The Court concludes that, while the Government may not have produced some materials in the most timely manner, there is no basis to find that the misstatements were intentional. At the very worst, perhaps some misstatements might be the product of negligence, but most appear to be inadvertent. Certainly, Defendant has not shown that he suffered any prejudice as a result of the alleged misstatements.

As to the alleged frivolous arguments, frivolous arguments may not be a basis for dismissal of an indictment. Nor do these assertions rise to the level of sanctionable misconduct.

As to the allegations of spoliation of evidence, Defendant first raises the damage to the Rothbart recording. This Court has concluded that, indeed, a Government employee did physically damage the recording. Despite this Court's respect for the audio expert who testified for Defendant, saying that the amount of force required to produce the damage was so great that

it must have been an intentional act, this Court is not persuaded that the damage was the result of the intentional destruction of evidence. It is difficult to credit the agent who caused the damage with the foresight to write a name on a CD so precisely that the recorded portions containing conversation with the Defendant were preserved, while the recorded portions between the informant and agent were destroyed. This is simply not a believable scenario for the intentional spoliation of evidence. The conduct may have been sloppy, negligent, and unprofessional – but it clearly was not intentional destruction. Moreover, the portion most helpful to Defendant, showing the inability of the informant to get Dr. Durante to improperly prescribe drugs, remains intact.

As to the failure to preserve 264 text messages, again, there is no basis to find intentional spoliation. It is clear that they were lost when the Blackberry holding them was sent for repair. As to the missing patient files and progress notes, there is nothing in the record to support the conclusion that they contained relevant evidence. Lastly, as to the failure to preserve the integrity of the cash seized from Defendant's safe, this Court addressed this issue in its Opinion and Order of July 10, 2012. Defendant has not persuaded this Court that he has been prejudiced in any way by this.

As to the alleged violations of Court Orders, Defendant again raises issues regarding the timeliness of discovery production. As already discussed, these do not rise to the level of intentional or sanctionable misconduct. As to the Rothbart recordings, while they may not have been produced in a timely fashion, they have been turned over to Defendant, and this Court sees no prejudice to him.

Defendant next alleges a constitutional violation, an improper search. The Court dealt

with this issue in the Opinion and Order of February 7, 2012, which Defendant references. Defendant is correct that this Court concluded that the protective sweep was an improper search, but concluded that the evidence was admissible under the doctrine of inevitable discovery. Defendant has not demonstrated any prejudice.

Lastly, Defendant brings up more issues regarding the timeliness of discovery. These do not rise to the level of intentional misconduct sufficient to justify dismissal of the indictment.

Defendant argues that dismissal of the Superceding Indictment is appropriate because of the prejudice he has suffered, and also to deter a pattern of misconduct. Defendant has not persuaded this Court that either rationale is applicable here, as he has demonstrated neither prejudice nor sanctionable and pervasive misconduct. Rather, on this motion, Defendant points to a mix of old and new issues. As discussed, this Court has already addressed some of these issues in prior Opinions, and Ordered remedial action. As to new and old alike, this Court is unsatisfied that any of these alleged violations has resulted in prejudice to Defendant. As to the contentions that late disclosure of <u>Brady</u> materials impacted strategy decisions, Defendant offers only conclusory assertions – no actual impact has been demonstrated.

Lastly, Defendant complains that Government misconduct has caused him to suffer very real delay in obtaining a trial date. This Court does not agree. While some of the delay in getting to trial has been the result of the Government's actions – such as its disclosure of expert opinions by doling out the information in dribs and drabs after Defendant protested the insufficiency of the disclosures, which is hardly commendable – the bulk of the delay to date, in the Court's view, is more reasonably attributed to the scope and complexity of this case, as well as the time needed to brief and decide numerous pretrial motions. As Defendant notes, the Government has marked

6

some 1,280 exhibits for trial, and the exhibit list has 51 pages.  This gives some indication of the size of this case, and a complex case does take time to get to trial.

Nonetheless, this Court observes that the Government's handling of this case has been far from ideal.  The Government has indeed been stingy in turning over documents to which Defendant was entitled.  Yet, despite the communication problems between the U.S. Attorney and Government agents, the Government did, eventually and voluntarily, turn over, before trial, the materials it was obligated to provide.  The Brady material was not ruined, and it has been produced to Defendant. While the record shows sloppiness and failures of communication among Government agents, the Court finds no basis to characterize these problems as willful or even grossly negligent misconduct.  Defendant has made no demonstration that his ability to present an effective defense has been prejudiced.

Defendant has not carried the heavy burden required to justify dismissal of the indictment.  On this subject, the Third Circuit has stated:

> [D]ismissal for a Brady violation may be appropriate in cases of deliberate misconduct because those cases call for penalties which are not only corrective but are also highly deterrent.  Deliberate misconduct is targeted for extra deterrence because we expect willful misbehavior to be the most effectively deterred by enhanced penalties.  While retrial is normally the most severe sanction available for a Brady violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper.

Virgin Islands v. Fahie, 419 F.3d 249, 254-255 (3d Cir. 2005).  Defendant has shown neither willful Government misconduct, nor prejudice.  Neither is the Court persuaded that any sanctions beyond those previously Ordered are warranted.

As to Defendant's arguments that the Government's conduct impacted his ability to effectively cross-examine TFO Izzo at the suppression hearing of January 9, 2012, the

7

Government has agreed to reoffer TFO Izzo's suppression hearing testimony. If Defendant desires, the Court will rehear this testimony to determine whether there has been any change.

Defendant's motion to dismiss the Superceding Indictment (Docket Entry No. 278) is **DENIED**.

**SO ORDERED.**

  s/ Stanley R. Chesler  
Stanley R. Chesler, U.S.D.J.

Dated: December 10, 2012